UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRISTOL WARREN REGIONAL SCHOOL COMMITTEE<br><br>Plaintiff<br>v.<br><br>MELISSA DaSILVA, as parent and next friend of C.C., alias; THE RHODE ISLAND BOARD OF REGENTS FOR ELEMENTARY AND SECONDARY EDUCATION<br>Defendants | ) | C.A. No. 04 - 521 ML |

**BRISTOL WARREN REGIONAL SCHOOL COMMITTEE'S OBJECTION TO DEFENDANT PARENT'S PETITION FOR ATTORNEY FEES AND COSTS**

Now comes the Bristol Warren Regional School Department ("Plaintiff") and hereby Objects to the Defendant's Petition for Attorney Fees and Costs. As grounds for said Objection the Plaintiff shall rely on the Memorandum of Law and accompanying Affidavit which have been simultaneously filed with this Objection.

Plaintiff
By its attorneys

Andrew Henneous, Esq. #5935
Brennan, Recupero, Cascione,
Scungio & McAllister,LLP
362 Broadway
Providence, RI 02909
Ph: 453-2000 Fax: 453-2345

**CERTIFICATION**

The undersigned hereby certifies that a true and accurate copy of the above Objection was mailed via first class mail, postage prepaid, to the below listed parties on this 17th day of July, 2006.

[signature]

Carol King, Esq.
Wallace Law Office
One Post Office Square
Sharon, MA. 02067

Darlene Alt, Esq.
Raymond Ripple, Esq.
Edwards and Angell
2800 Financial Plaza
Providence, RI 02903

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| BRISTOL WARREN REGIONAL SCHOOL COMMITTEE<br><br>Plaintiff<br>v.<br><br>MELISSA DaSILVA, as parent and next friend of C.C., alias; THE RHODE ISLAND BOARD OF REGENTS FOR ELEMENTARY AND SECONDARY EDUCATION<br>Defendants | ) | C.A. No. 04 - 521 ML |

**BRISTOL WARREN REGIONAL SCHOOL COMMITTEE'S MEMORANDUM OF LAW IN SUPPORT OF ITS OBJECTION TO DEFENDANT PARENT'S PETITION FOR ATTORNEY FEES AND COSTS**

Now comes the Bristol Warren Regional School Department ("Plaintiff") and hereby Objects to the Defendant Parent's Petition for Attorney Fees and Costs. The Defendant Parent's Petition should be denied because Defendant Parent did not achieve her primary goal of an out of district placement. In addition, Defendant Parent's requested attorney fees are excessive, unreasonable, unnecessary and lacking in sufficient detail to merit the requested award.

1. **DEFENDANT PARENT WAS NOT A PREVAILING PARTY ENTITLED TO AN AWARD OF ATTORNEY FEES AND COSTS.**

(a) Factual Background

Defendant Parent's primary objective in filing her request for due process was to obtain an out of district placement for C.C. It is uncontroverted that the Hearing Officer

did not order an out of district placement. The Defendant now attempts to "back pedal" and states that "her main goal was to obtain Wilson reading instruction for C.C." (Defendant Parent's Petition for Attorney Fees and Costs, pg. 3). However, a reading of the administrative hearing transcripts and Defendant Parent's brief clearly show otherwise. Defendant's opening statement concluded with "He [C.C.] needs a change because no matter how hard the school tries, they simply can't meet his needs, they are too great" (July 15, 2004 Tr. p. 13)[1]. C.C. himself testified that "I would like to go to a high school, just not this one" (July 15, 2004 Tr. p. 53) and also stated that if he had to return to the high school "I think I'm going to drop out" (July 15, 2004 Tr. p. 53).

Both of Defendant Parent's experts focused their testimony on their view that C.C. needed an out of district placement. In fact, the bulk of their testimony was on that issue. Dr. Kotula testified that "he [C.C.] needed placement and I didn't think his needs could be made in a traditional school setting. And I don't draw that kind of conclusion lightly because I do believe in keeping kids with their peers and in public schools whenever possible" (August 19, 2004 Tr. p. 29). She then testified at length (August 19, 2004 Tr. pp. 31-52) regarding his need for an out of district specialized placement and what type of placement it should be. She concluded by naming two potential schools for placement in Massachusetts, Landmark and Eagle Hill (August 19, 2004 Tr. pp. 51-52).

---

[1] All transcripts, Motions, Objections, and other documents referred to have, upon information and belief, been provided to the Court by the District and by the Rhode Island Board of Regents for Elementary and Secondary Education. Any documents from the original hearings which have inadvertently not been provided to this Court shall be provided forthwith upon request.

Defendant Parent's second expert, Joel Ristuccia, a certified school psychologist, also testified that C.C. should attend an out of district placement such as the Landmark school (August 19, 2004 Tr. pp. 100-101). Mr. Ristuccia also testified that C.C. could not succeed in his current placement (August 19, 2004 Tr. p.91). Finally, the Parent's written Closing Argument, filed with the Hearing Officer on or about October 1, 2004, requests the following relief:

> "For the foregoing reasons, counsel for the student respectfully requests the Hearing Officer to order the Bristol Warren Regional School District to place CJ [CC] at the Landmark School. Although we do not argue that CJ [CC] requires a residential placement, no schools within an hours drive have been located. In this situation, placement in a residential school is appropriate. If Landmark does not accept him, we request an order that the school fund an independent evaluator to review records, observe programs, and report to the Hearing Officer and parties with a recommendation for placement." (Citations omitted)

Although the Defendant Parent's original Request listed multiple areas of relief, it is clear that throughout the hearing, and right down to the closing statement, the Defendant Parent was interested in one outcome, an out of district placement. This was recognized by the Hearing Officer as well who identified the issue as "Was the placement for the student appropriate under FAPE?" (Hearing Officer Decision, p.3).

The Plaintiff District's witnesses repeatedly testified that C.C. could receive his education in the District's public school setting with appropriate modifications and accommodations (August 25, 2004 Tr. pp. 17, 51, 85-86, September 10, 2004 Tr. pp. 48, 144-147). The Hearing Officer agreed. He ruled that the District had to conduct several evaluations and modify the IEP, but he did not order an out of district placement (Hearing Officer Decision, p. 20).

In addition, many of the items ordered by the Hearing Officer below had either been requested by the District or were already being provided. The District, during the course of the hearing, had filed a Motion requesting a psychological evaluation (see Motion for an Order Regarding Psychological Evaluation dated September 8, 2004). During the course of the hearing the District had also offered to conduct a neuropsychological evaluation[2] as shown in District's Objection to Parent's Motion for Partial Summary Judgment, Paragraph 8. However, the parties could not agree on an independent professional to conduct the evaluation.[3]

The Hearing Officer also ordered a full reading program with Wilson Reading Program or other similar program. This program was already being provided by the District. Over the summer of 2004, the District provided reading instruction to C.C. by a certified Wilson teacher (September 10, 2004 Tr. p. 4). That person had recommended continued Wilson instruction for the upcoming school year (September 10, 2004 Tr. p. 16). The District, by the Defendant Parent's own admission, had been providing specialized reading instruction since the spring of 2003 (September 10, 2004 Tr. p. 162). The District testified that this instruction would continue for the 2005-2006 school year (September 10, 2004 Tr. pp. 162, 164-166). The IEP offered by the District also

---

[2]It is assumed that the Hearing Officer inadvertently referred to this as a neurological evaluation in his decision. Neither party ever mentioned or argued for a neurological evaluation and in fact after the decision, the parties agreed on a professional and a neuropsychological evaluation was conducted.

[3]The Defendant Parent also had requested an independent evaluation during the course of the hearing. However, her request was not ripe in that she never objected to an evaluation conducted by the District. Further, the type of evaluation was never specified and none was ordered as a result of her request.

contained written language goals in a small setting (as had previous IEP's).[4] It should also be noted that the Hearing Officer did not order any type of compensatory services to be provided by the District as requested by the Parent.

(b) Legal Analysis

(i) Defendant's did not achieve their primary goal of an out of district placement.

"To qualify as a prevailing party, a litigant must demonstrate that: (1) He obtained relief on a significant claim in the litigation; (2) such relief effected a material alteration in is legal relationship with the defendant; and (3) the alteration is not merely *de minimis* in nature." Kathleen H. v. Massachusetts Department of Education, 154 F.3d 8, 14 (1st Cir. 1998). In Kathleen H., the Court found that parents were not the prevailing party where a Hearing Officer had found merely procedural violations and made some modifications to the Individualized Education Plan (IEP). Id. at 14-15 The Court found that this type of relief, in light of the main objective to obtain reimbursement for private school tuition, was "*de minimis* in the context of the broader goals in this case." Id. at 15

In Linda T v. Rice Lake Area School District, 417 F.3d 704 (7th Cir. 2005) the Court ruled in a similar fashion. The Administrative Law Judge in that case had determined that although the parents had not prevailed on their request for placement and an independent evaluation, they were still "prevailing parties" because they had

[4]The Hearing Officer did modify the IEP to include math services and extended school year (ESY). Math services had ben provided in prior IEP's and were included in the last IEP submitted to the Hearing Officer prior to his Decision. ESY had not yet been considered by the IEP team as this issue is usually determined toward the end of the school year. CC did receive summer services during 2004.

received a ruling ordering revisions to the IEP. Id. at 707. The District Court found that the award was based on "secondary concerns" and therefore was *de minimis*. Id. The Seventh Circuit Court of Appeals upheld the lower Court's ruling citing in part, Farrar v. Hobby, 506 U.S. 103 (1992) for the proposition that a *de minimis* success on the merits does not support an award of attorney fees. Id. "If the most critical factor in determining reasonableness is the degree of success obtained, it follows there is a certain point below which the plaintiff's success will support no award at all. Nothing in the 1997 fee-shifting amendments to IDEA affects this principle. Id. (Citations omitted)

(c) Conclusion

Despite the Defendant Parent's attempt to "back fill" her issues, the record clearly indicates the Defendant Parent's primary issue was achieving an out of district placement, and that relief was not awarded. Accordingly, Defendant Parent did not achieve her primary goals and cannot considered a prevailing party who is entitled to an award of attorney fees and costs in this action. Defendant Parent's achievement was *de minimis*. Kathleen H. supra, and Linda T. supra.

## 2. DEFENDANT PARENT'S ATTORNEY FEES ARE EXCESSIVE, UNREASONABLE AND UNNECESSARY.

Pursuant to 34 C.F.R. Part 300.513(c)(4)(iii), an award of attorney fees may be reduced if the court finds that "the time spent and legal services furnished were excessive considering the nature of the action or proceeding.[5] The First Circuit also

[5] *See also* the Rhode Island Board of Regents for Elementary and Secondary Education Regulations Governing the Education of Children with Disabilities Section 300.513(c)(4)(iii).

recognizes the Lodestar approach regarding attorney fees. Grendel's Den, Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984) "The lodestar - a threshold point of reference which is subject to additions or deductions for specific reasons - is determined by multiplying the total number of hours reasonably spent by a reasonable hourly rate. To determine the number of hours reasonably spent, one must first determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." Id. (Citations omitted)

The Defendant Parent's attorney has submitted a request for attorney fees in the amount of $84,635.00. While her Affidavit claims that this matter was complex and required such an investment of time, the opposite is true. This was a relatively straight forward case. The Parent believed that the school department could not provide services to her child and therefore the child should be placed out of district. The District believed it could provide the required services to the child in district. This scenario is commonly litigated. (See Affidavit of Attorney Carroll attached hereto and marked as Exhibit 1) While there may have been a dispute as to the level of the child's reading disability, the was no dispute that he had a reading disability.

This case was heard over four (4) days. However, these were not full days of hearing. The total hours of hearing time (per the transcripts) was approximately sixteen (16) hours including lunch breaks. Each party filed a closing brief. The Defendant's Closing brief was sixteen (16) pages long. As best can be ascertained from the time sheet submitted, this closing brief took Defendant's attorney over thirty-eight (38) hours

to draft. The brief took more than twice as long as the actual hearings. This is clearly not reasonable. It is excessive and involved an unwarranted number of hours on its face. (See Exhibit 1) A careful review of the summary of fees uncovers other multiple instances of excessive and unnecessary overcharges such as four (4) hours to draft a four page due process request,[6] over twenty-nine hours (29) researching and drafting an Affidavit and Petition for Fees, and over fifty nine (59) hours apparently devoted to document review and witness preparation for hearings.[7] In Grendel's Den, Inc. , a complex constitutional case covering a period of six (6) years, the Court upheld twenty-five (25) hours to prepare a forty (40) page response and sixteen (16) hours to write a thirty-seven page brief. Here the Defendant's attorney seeks payment for more than thirty-eight hours (38) to write a sixteen (16) page brief. Sixteen (16) hours to write a thirty-eight (38) page brief might be reasonable under Grendel's Den, Inc., supra, but not the converse.

In addition, it appears that Defendant's attorney has claimed an undeterminable amount of time that is over thirteen hours (13.8) and that is inexplicably included in her petition. These hours are not related to the due process matter before the Court. Rather, they relate to truancy proceedings brought against C.C. and his brother. They are a completely unrelated to the matter which is before this Court and this fact significantly undermines the accuracy and relevance of Defendant Parent's claim for

---

[6]One page is a form to be filled out which is prepared by the Dept. Of Education and the last page contains one (1) line of substance.

[7]All of the above figures are estimates and guesses based upon the time entries submitted to the Court. As addressed below, the District believes these time entries are vague and do not contain sufficient information to accurately determine an award for attorney fees.

attorney fees.

Accordingly, Defendant Parent's Petition for Attorney Fees and Costs should be denied on the basis of an unreasonable number of attorney hours sought for a routine due process hearing. In the alternative, the amount of attorney time should be significantly reduced to eliminate the unreasonable, unnecessary, unrelated and excessive charges contained therein. A request for over $84,000.00 in fees for sixteen (16) hours of hearing time, a sixteen (16) page brief, and miscellaneous filings is excessive and unreasonable on its face, and even more so based upon a complete review of the record and inadequately detailed attorney time submitted. (see #3 below)

3. **DEFENDANT PARENT'S ATTORNEY FEES ARE LACKING IN SUFFICIENT DETAIL.**

The burden is on the Defendant Parent to show the reasonableness of the hours billed. Saizan v. Delta Concretes Products Company, Inc., 448 F.3d 795, 799 (5th Cir. 2006). Defendant Parent does not even come close to satisfying her burden. The Defendant Parent's attorney has submitted time entries which are inadequately detailed to carry her burden of proof as is apparent by an examination of the billing records appended to Attorney King's Affidavit. In most entries on these records it is impossible to tell whether the entry is even related to the due process matter. For further example, numerous telephone calls are billed without any indication as to the topic discussed, the reason for the conversation, and in some instances, the identity of the person with whom Attorney King spoke. The Defendant Parent's attorney has multiple entries regarding phone calls with certain individuals who were not a part of the due process

hearing (see for example references to telephone calls with Amy Tabor and Dr. Pambookian). Even with calls listed with individuals who were involved in the hearings, it is impossible to ascertain whether the reasons for these calls were related to the hearing.

Some of the work listed on Attorney King's billing records are obviously unrelated to the due process hearings. Attached hereto as Exhibit 2 is an excerpted copy of Attorney King's computerized records with yellow highlight entries. These highlighted entries clearly refer to the unrelated legal work that Attorney King performed in connection with a truancy case involving both of the Parent's children.[8] Several of the hearing / court entries take place well before the first due process hearing ever occurred.

Finally, the computerized records also indicate a significant amount of time for individual's other than Attorney King. (see attached Exhibit 3) The qualifications and experience of these individuals in the field of special education or the practice of law is unknown and no documentation regarding the same has been submitted to the Court. There is no justification of their hourly rate or involvement in the case.

Counsel for the Plaintiff is not in a knowledgeable position to go through each and every other entry in Defendant Parent's attorney time records; neither is this Court. This is why the burden for providing sufficient detail is on the requesting party. Saizan, supra. Defendant Parent has failed miserably in meeting her burden.

---

[8]The highlighted entries in no way represent the only questionable, unreasonable entries. They are submitted simply as an example.

Finally, Plaintiff notes that Defendant Parent has failed to provide a description of any fee agreement made with her client regarding this case as is required by D.R.I. LR 54.1(b)(1)(D).

## CONCLUSION

The Defendant Parent has failed to meet her burden to show that the requested attorney fees are necessary, reasonable or even related to the matter at hand. For the reasons set forth above, the Defendant Parent's request for attorney fees should be denied or in the alternative, significantly reduced.

Plaintiff
By its attorney

Andrew Henneous, Esq. #5935
Brennan, Recupero, Cascione,
Scungio & McAllister,LLP
362 Broadway
Providence, RI 02909
Ph: 453-2000 Fax: 453-2345

**CERTIFICATION**

The undersigned hereby certifies that a true and accurate copy of the above Memorandum was mailed via first class mail, postage prepaid, to the below listed parties on this 17th day of July, 2006.

Carol King, Esq.
Wallace Law Office
One Post Office Square
Sharon, MA. 02067

Darlene Alt, Esq.
Raymond Ripple, Esq.
Edwards and Angell
2800 Financial Plaza
Providence, RI 02903