UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

BRISTOL WARREN REGIONAL       :
SCHOOL COMMITTEE,             :
            Plaintiff,        :
      v.                      :        CA 04-521 ML
                              :
MELISSA DaSILVA, as parent and :
next friend of C.C., alias; THE :
RHODE ISLAND BOARD OF REGENTS :
FOR ELEMENTARY AND SECONDARY  :
EDUCATION,                    :
            Defendants.       :


**REPORT AND RECOMMENDATION[1]**

Before the Court is the Petition for Attorney's Fees and
Costs (Document ("Doc.") #23) (the "Petition") filed by Melissa
DaSilva ("Defendant" or "Parent").  Parent seeks an award of
attorney's fees and costs as a prevailing party pursuant to 20

---

[1] Although this matter was referred to me for determination, I
have concluded that an award of attorney's fees and costs in the
instant circumstances should be addressed in the form of a Report and
Recommendation.  See Rajaratnam v. Moyer, 47 F.3d 922, 924 (7th Cir.
1995)(holding that magistrate judge did not have jurisdiction to enter
order on attorney fee application under Equal Access to Justice Act
and stating that an "application for fees cannot be characterized as
nondispositive"); Estate of Conners v. O'Connor, 6 F.3d 656, 659 (9th
Cir. 1993)("We conclude that the magistrate was not authorized under
[28 U.S.C. §] 636(b)(1)(A) to enter a final order on the plaintiff's
motion for attorney's fees because the motion did not involve a
nondispositive pretrial matter."); see also Gomes v. Trustees &
President of Univ. of Maine, No. Civ. 02-147-B-S, 2003 WL 22004092, at
*1 n.1 (D. Me. Aug. 22, 2003)(observing that "[w]hether the
determination of a motion for attorney fees by a magistrate judge
falls within 28 U.S.C.A. § 636(b)(3) (providing that a magistrate
judge may be assigned additional duties [non-trial] not inconsistent
with the Constitution and the laws of the United States) presents a
question on which much ink might be expended ...," and concluding that
"in the present case the better alternative is to make ... findings in
a recommended decision subject to de novo review, a process that
clearly comports with the United States Constitution")(first
alteration in original).

U.S.C. § 1415(i)(3)(B)[2] of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq*.  Plaintiff Bristol Warren Regional School Committee ("Plaintiff" or "BWRSC") has filed an objection to the Petition.  For the reasons stated herein, I recommend that the Petition be granted to the extent that Parent be awarded attorney's fees of $21,802.50 and costs of $909.00.

### Facts and Travel

Parent is the mother of C.J.[3]  See Doc. #12 (Record of Administrative Hearing[4] ("R. Admin. Hear.")), filing 7 (Hearing Transcripts), Transcript of 7/15/04 Hearing ("7/15/04 Tr.")[5] at

---

[2] 20 U.S.C. § 1415(i)(3)(B) provides: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs ... to a prevailing party who is the parent of a child with a disability ...."  20 U.S.C.. § 1415(i)(3)(B) (2006 Supp.).

[3] Although the child is identified as "C.C." in the caption of the filings in this matter, the record reflects that the parties consistently referred to him as "C.J."  The Court adopts the parties' practice.

[4] The record in this case is found in the following:
  1) a gray court file containing Docs. #1-11, #14-23, and #25;
  2) a second gray court file which contains Doc. #12 (the Record of the Administrative Hearing which was transmitted to the Court by the Rhode Island Board of Regents for Elementary and Secondary Education and which contains eight filings numbered 1 through 8, see letter from Wood to Clerk of 2/10/05, attached to inside cover of the second gray court file);
  3) two black ring binder notebooks which together contain Doc. #13 (the "Supplemental Administrative Record"), see letter from Wood to Clerk of 3/3/05 located in the inside front cover of Binder #1; and
  4) Supplemental Exhibits ("Supp. Exs.") submitted by the parties and which are designated A through F, see Letter from King and Henneous to Martin, M.J., of 8/28/06.
  Document #24, a stipulation extending the time for the Bristol Warren Regional School Committee ("BWRSC") to file an objection to the Petition, is missing from the Court file.  The absence of this document does not affect the Court's determination of this matter.

[5] Hereafter, when citing to a hearing transcript, the Court cites directly to the transcript (e.g., 7/15/04 Tr., 8/19/04 Tr., 8/25/04 Tr., or 9/10/04 Tr.).

63-64.  C.J. was born on November 11, 1988.  See R. Admin. Hear.,
filing 1 (Request for Impartial Due Process Hearing).  A special
needs student since early childhood, C.J. was repeating the
eighth grade and reading and writing at a second grade level in
the spring of 2004.  See Doc. #12, filing 1, Attachment ("Att.")
(Request for Due Process Hearing ("Request for DPH")[6]) at 1.  On
or about May 7, 2004, Parent requested a due process hearing at
the Rhode Island Department of Education ("RIDE").[7]  See id.,
filing 2 (Letter from King to RIDE of 5/7/04).  In the request,
Parent alleged: 1) that C.J.'s IEP[8] and placement were not
adequate to allow him to make meaningful academic progress, 2)
that services promised on his IEP were not regularly provided,
and 3) that his current IEP had expired and the Team[9] had not

---

[6] Hereafter, when citing to the Request for Due Process Hearing
("Request for DPH"), the Court cites directly to the request.

[7] Under the Individuals with Disabilities Education Act ("IDEA"),
20 U.S.C. § 1400 et seq., a parent who has a complaint regarding the
educational placement of his/her child or the provision of a free
appropriate public education for the child, may obtain a due process
hearing pursuant to § 1415(f).  See 20 U.S.C. § 1415(f); see also
Smith v. Fitchburg Pub. Sch., 401 F.3d 16, 18 n.1 (1st Cir. 2005)
(noting that an "aggrieved child's parent[] ... may initiate a due
process hearing under 20 U.S.C. § 1415 ...").  In Rhode Island, due
process hearings are conducted by the Rhode Island Department of
Education ("RIDE").

[8] "An IEP is a statement of the educational program which must be
written for each child and designed to meet each child's unique
needs."  Murphy v. Timberlane Reg'l Sch. Dist., 22 F.3d 1186, 1188 n.2
(1st Cir. 1994); see also 20 U.S.C. §§ 1401(14), 1412(a)(4) (2006
Supp.); Smith v. Fitchburg Pub. Sch., 401 F.3d at 19 n.3 (explaining
IEP abbreviation); cf. Aguirre v. Los Angeles Unified Sch. Dist., 461
F.3d 1114, 1115-16 (9th Cir. 2006)("States who elect to receive federal
financial assistance must demonstrate that they have in effect
policies and procedures to provide disabled children with a free
appropriate public education through the creation of a tailored
program known as an individualized education program or IEP.")
(internal quotation marks omitted).

[9] "The IEP is created by a team that includes the child's
parents, teacher, a special education teacher, a school representative
and others."  Aguirre v. Los Angles Unified Sch. Dist., 461 F.3d at

3

been reconvened to review the results of his most recent evaluation.  See Request for DPH at 1.

Among other relief, Parent sought an order finding that BWRSC had failed to provide C.J. with a free, appropriate public education and requiring BWRSC to develop an appropriate educational plan for him.  See Request for DPH at 2.  Parent wanted that plan to include: 1) placement in a small, language-based educational setting, 2) instruction in the Wilson reading program or in an equivalent program, 3) services for his social-emotional difficulties, 4) provision of appropriate assistive technology, and 5) extended year services.  See id.  Parent also requested an order requiring BWRSC to cease and desist from disciplining C.J. for conduct relating to his disability.  See id.  Additionally, Parent sought "[a]n order for compensatory education ...."  See id.

RIDE appointed William Croasdale as the Hearing Officer. See Doc. #12, filing 4 (Letter from DiPaola to Croasdale of 5/12/04).  Attempts to resolve the dispute between the parties at pre-hearing conferences were unsuccessful, and the matter proceeded to formal hearing.  See id., filing 8 (Decision)[10] at 3.  The hearing was held on July 15, August 19, August 25, and September 10, 2004.  See Complaint ¶ 13.

On October 29, 2004, the Hearing Officer rendered his decision.  See Decision at 1.  He found that BWRSC had not met C.J.'s needs in reading, written language, and mathematics and that this was a violation of C.J.'s right to a free, appropriate public education.  See id. at 19.  Based on these findings, the

---

1116 (citing 20 U.S.C. § 1414(d)(1)(B)); see also Murphy v. Timberlane Reg'l Sch. Dist., 22 F.3d at 1188 ("The IEP is developed by a team including a qualified representative of the local educational agency, the teacher, the parents or guardian, and, where appropriate, the student.").

[10] Hereafter, the Court cites directly to the Decision.

Hearing Officer ruled that "the parent prevails."  Decision at
19.  He ordered that C.J. be given a full psychological
evaluation, a complete neurological evaluation, and a full
assessment of his need for occupational therapy and that an
appropriate behavioral plan be developed based on the results of
these evaluations.  See id. at 20.  The Hearing Officer
additionally ordered that a new IEP be written and that it
provide for C.J. to receive: 1) a full reading program with the
Wilson reading program or similar program; 2) small group,
individualized instruction in written language; 3) small group
instruction in mathematics; and 4) an extended school year.  See
id.  In the penultimate paragraph of the Decision, the Hearing
Officer wrote that if BWRSC was unable to comply with these
requirements, "placement in a suitable private school program
should be found."  Id.

On December 10, 2004, BWRSC appealed the Hearing Officer's
Decision by filing the instant action pursuant to 20 U.S.C. §
1415(i)(2).  See Docket.  Parent answered the Complaint on
December 23, 2004.  See id.  In lieu of filing an answer,[11] the
Rhode Island Board of Regents for Elementary and Secondary
Education, filed a notice of Transmittal of the Record (Doc. #12)
on February 11, 2005.  See Docket.  After several settlement
conferences with Senior Magistrate Judge Robert W. Lovegreen,
Parent and BWRSC reached an agreement resolving all issues in the
litigation with the exception of Parent's claim for attorney's
fees and costs.  See Stipulation (Doc. #26).

Parent filed the instant Petition on July 3, 2006, see
Docket, and BWRSC filed its objection to the Petition on July 17,

---

[11] See letter from Wood to Clerk of 2/10/05 attached to inside
cover of the gray court file containing Doc. #12; see also R.I. Gen.
Laws § 42-35-15(d) (1993 Reenactment)(2006 Supp.); Providence Sch.
Dep't. v. Ana C., 108 F.3d 1, 5 (1st Cir. 1997)(holding that R.I. Gen.
Laws § 42-35-15 applies to IDEA appeals).

2006, <u>see</u> Bristol Warren Regional School Committee's Objection to Defendant Parent's Petition for Attorney Fees and Costs (Doc. #25); <u>see also</u> Docket.  A hearing was conducted on August 17, 2006.  Thereafter, the matter was taken under advisement.

## Discussion

BWRSC advances three arguments in opposition to the Petition.  First, BWRSC disputes that Parent was a prevailing party entitled to an award of attorney's fees and costs.  <u>See</u> Bristol Warren Regional School Committee's Memorandum of Law in Support of Its Objection to Defendant Parent's Petition for Attorney Fees and Costs ("BWRSC Mem.") at 1-6.  Second, it contends that Parent's attorney's fees are excessive, unreasonable, and unnecessary.  <u>See</u> <u>id.</u> at 6-9.  Third, BWRSC argues that the fees lack sufficient detail to support an award. <u>See</u> <u>id.</u> at 9-12.  The Court addresses these arguments seriatim.

## 1.  Was Parent a Prevailing Party?

### a.  Law

To determine whether Parent was a prevailing party for purposes of the IDEA, the Court is guided by the Supreme Court's decision in <u>Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health & Human Services</u>, 532 U.S. 598, 121 S.Ct. 1835 (2001).  <u>See</u> <u>Smith v. Fitchburg Pub. Sch.</u>, 401 F.3d 16, 22 (1st Cir. 2005).  "In <u>Buckhannon</u>, the Supreme Court held that for a party to be considered 'prevailing,' there must be a 'material alteration of the legal relationship of the parties,' 532 U.S. at 604, 121 S.Ct. 1835 (quotation omitted), and there must be 'judicial *imprimatur* on the change.'[12]  <u>Id.</u> at 605, 121 S.Ct.

---

[12] Because Parent obtained a favorable ruling from the Hearing Officer, the requirement of "judicial imprimatur" is satisfied here. <u>See</u> <u>Smith v. Fitchburg Pub. Sch.</u>, 401 F.3d 16, 22 n.9 (1st Cir. 2005) (noting that "a party may 'prevail' in an administrative hearing ..." and that "the appropriate involvement of a [state educational agency] hearing officer can provide the necessary 'judicial imprimatur'"). Thus, the question which the Court must decide here is whether the

1835 (emphasis in original)." <u>Smith v. Fitchburg Pub. Sch.</u>, 401
F.3d at 22; <u>see also</u> <u>Maine Sch. Admin. Dist. No. 35 v. Mr. & Mrs.</u>
<u>R.</u>, 321 F.3d 9, 14 (1st Cir. 2003)("For purposes of a federal
fee-shifting statute, a prevailing party is any party who
'suceed[s] on any significant issue ... which achieves some of
the benefits plaintiffs sought in bring suit.'")(quoting <u>Hensley</u>
<u>v. Eckerhart</u>, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939 (1983))
(alterations in original); <u>id.</u> ("The party's success cannot be a
hollow victory; it must materially alter the litigants' legal
relationship by modifying one party's behavior in a way that
directly benefits the other."); <u>id.</u> at 15 ("Thus, the change
effected must be material; a purely technical or de minimis
victory cannot confer prevailing party status."); <u>Kathleen H. v.</u>
<u>Massachusetts Dep't of Educ.</u>, 154 F.3d 8, 14 (1st Cir. 1998)("To
qualify as a prevailing party, a litigant must demonstrate that:
(1) He obtained relief on a significant claim in the litigation;
(2) such relief effected a material alteration in his legal
relationship with the defendant; and (3) the alteration is not
merely technical or de minimus in nature."); <u>id.</u> ("a plaintiff
'prevails' when actual relief on the merits of his claim
materially alters the legal relationship between the parties by
modifying the defendant's behavior in a way that directly
benefits the plaintiff")(quoting <u>Farrar v. Hobby</u>, 506 U.S. 103,
111-12, 113 S.Ct. 566, 573 (1992)).

      "[A] court faced with the need to decide whether a litigant
is (or is not) a prevailing party must make a qualitative inquiry
into the import of the result obtained." <u>Maine Sch. Admin. Dist.</u>
<u>No. 35 v. Mr. & Mrs. R.</u>, 321 F.3d at 15. "[I]t is helpful to
identify the relief sought by the plaintiff and compare it with

---

Hearing Officer's Decision caused a material alteration in the legal
relationship between C.J. and BWRSC. See <u>Smith v. Fitchburg Pub.</u>
<u>Sch.</u>, 401 F.3d at 22.

7

the relief obtained as a result of the suit." <u>Maine Sch. Admin.</u>
<u>Dist. No. 35 v. Mr. & Mrs. R.</u>, 321 F.3d at 15 (quoting
<u>Christopher P. v. Marcus</u>, 915 F.2d 794, 804 (2nd Cir. 1990))
(alteration in original).

### b.  Application

In her Request for DPH, Parent requested an order: 1)
finding that BWRSC had failed to provide C.J. with a free,
appropriate public education ("FAPE"); 2) requiring that BWRSC
develop an appropriate education plan for him, which included
placement in a small, language based educational setting,
intensive instruction in the Wilson reading program or other
similar reading program, services for his social-emotional
difficulties, provision of appropriate assistive technology, and
extended year services; 3) requiring BWRSC to cease and desist
from disciplining C.J. for conduct relating to his disability;
and 4) an order for compensatory education.  <u>See</u> Request for DPH
at 2-3.  Parent also requested such other and further relief as
the Hearing Officer deemed necessary.  <u>See</u> <u>id.</u> at 3.

In his Decision, the Hearing Officer found that:

> the school department did not meet the needs of the
> student in reading, written language, and mathematics.
> Further, the reading program was used intermittently and
> the reading specialist stopped working with student.
> This is a violation of F.A.P.E.

Decision at 19.  Of the relief which was specifically requested
by the Parent (as enumerated in the preceding paragraph), the
Hearing Officer's Decision clearly reflects that her first
request was fully granted and her second was granted to the
extent that BWRSC was ordered to provide "small group/
individualized instruction in written language," <u>id.</u> at 20,

"small group instruction in mathematics," Decision at 20,[13] "a
full reading program with the Wilson Reading Program or similar
program," id., and "an extended school year to maintain
progress,"[14] id.  Less clearly, the Decision suggests that

_____

[13] Parent acknowledges that she had not specifically requested
"small group instruction in writing and math ...."  Petition at 3.
Nevertheless, the Hearing Officer's order that C.J. be provided small
group instruction in writing and math fits sufficiently within the
scope of Parent's broad request that C.J. be "place[d] in a small,
language-based educational setting ...."  Request for DPH at 2.  Thus,
the Court considers it as part of the relief which Parent obtained.

[14] The Hearing Officer's order that the new IEP include "an
extended school year to maintain progress," Decision at 20, is
seemingly at odds with the position he took during the hearing.  In a
colloquy during the direct examination of one of Parent's experts, he
agreed that the decision whether to provide extended services belonged
to the IEP team.

Q.   Now, what do you think of an extended school year for
     C.J.?

     MR. HENNEOUS: Objection.  Extended school year isn't
               at issue in this case.  It's irrelevant.

     [HEARING OFFICER]:  Actually, it's placement.

     MS. KING: I think it's relevant to the fact because
               we are looking at services.

     MR. HENNEOUS: It hasn't been raised as an issue in
               this case.

     [HEARING OFFICER]: Well, actually the placement has
               been raised but what are you
               driving at, [MS. KING]?

     MS. KING: Her recommendations regarding whether
               or not he needs extended services in
               reading.

     MR. HENNEOUS: That's a decision of when it comes time
               and the IEP team will make it and if
               they don't like the decision, then
               that's something that you can go through
               this process.

     [HEARING OFFICER]: Well, **Mr. Henneous is correct about**

9

Parent's request that C.J. "receive services for his social-emotional difficulties ...," Request for DPH at 2, was granted to the limited extent that BWRSC was required to develop and propose "[a]n appropriate behavioral plan ... based upon the ... results [of a full psychological evaluation, a neuropsychological[15] evaluation, and a full assessment of his need for occupational therapy[16]]," Decision at 20.

Parent asserts that "[s]he received almost all of the relief she requested," Petition at 3, and that she achieved her "main goal to obtain Wilson reading instruction for C.J," id. She also counts the evaluations ordered by the Hearing Officer as among her successes. See id. The Court finds Parent's assessment of the degree of her success to be problematic. The administrative

---

**the IEP team doing it**. If you
want, I don't mind the question but
I think the understanding is the
IEP team is the one that actually
does it.

MS. KING: Yes, that is understandable.

[HEARING OFFICER]: I don't mind your asking the
question but **Mr. Henneous is
correct about the IEP team.**

8/19/04 Tr. at 40-41 (bold added).

[15] Although the Hearing Officer actually used the term "neurological evaluation," Decision at 20, BWRSC suggests that this was an inadvertent reference as "[n]either party ever mentioned or argued for a neurological evaluation and in fact after the decision, the parties agreed on a professional and a neuropsychological evaluation was conducted." Bristol Warren Regional School Committee's Memorandum of Law in Support of Its Objection to Defendant Parent's Petition for Attorney Fees and Costs ("BWRSC Mem.") at 4 n.2. After reviewing the record, the Court agrees with BWRSC's assumption.

[16] Parent suggests that the occupational therapy assessment "was relevant to determining what assistive technology C.J. might need." Petition at 3 n.1. However, even if this is correct, this is too thin a strand on which to base a finding that Parent succeeded on her request for assistive technology.

hearing transcripts and the filings of Parent's counsel reflect
that the Parent's primary goal was an out of district placement.
At the start of the administrative hearing, there was a
discussion among counsel and the Hearing Officer regarding the
issue(s) to be determined by the hearing.  See 7/15/04 Tr. at 3-
7.  Although Parent's counsel refused to agree with BWRSC's
counsel that placement was the only issue to be determined by the
hearing, she acknowledged that it was a primary issue.  See id.
at 4-6.

> First, the issue isn't just placement as was noted in
> the request for the due process hearing.  There are
> certainly a number of issues, primarily Bristol/Warren
> Regional School failed to provide C.J. ... with free
> and appropriate public education?
>
> ....
>
> **Placement is certainly an issue that remains a
> primary issue in this case.**

7/15/04 Tr. at 5-6 (bold added).

In concluding her opening statement, Parent's counsel
indicated that BWRSC could not meet C.J.'s needs and that "a
change," id. at 13, was required.  The clear implication of her
statement was that an out of district placement was necessary:

> C.J. has been turned off to school.  School personnel
> are turned off to C.J.  [T]he IEP that the School is
> proposing will doom him to failure.  **He needs a change
> because no matter how hard the school tries, they simply
> can't meet his needs, they are too great.**  Thank you.

Id. at 13 (bold added).  Relatedly, C.J. testified that he "would
like to go to a high school, just not this one," id. at 53, and
that if he had to go there he thought that he was "going to drop
out," id.  Somewhat less specifically, Parent testified that she
thought C.J. was going to drop out if his educational program did
not change.  Id. at 79.

Both of Parent's expert witnesses opined that C.J. needed an
out of district placement, and the bulk of their testimony was
devoted to that issue.  Dr. Andrea Winokur-Kotula ("Dr. Kotula")
testified that "he [C.J.] needed placement and I didn't think his
needs could be met in the traditional school setting.  And I
don't draw that kind of conclusion lightly because I do believe
in keeping kids with their peers and in public schools whenever
possible."  8/19/07 Tr. at 29.  She noted that C.J. had had "a
lot of reading intervention," id., but that "it has not brought
him anywhere near his [reading] grade level or his potential,"
id. at 30, and "that he can't function in his other academic
classes because everything, all the academic classes in a
traditional school, require reading and writing," id.  Dr. Kotula
recommended that C.J. be placed in a school that specializes in
teaching students with language-based reading difficulties/
disabilities and that provides very small group structured and
systematic programs which are individualized to each student's
needs.  See 8/19/04 Tr. at 31.  She identified Landmark, Willow
Hill, and Eagle Hill as private schools meeting this criteria.
See id. at 51.

Parent's second expert, Joel Ristuccia, a school
psychologist, testified that C.J. "needs specialized instruction
to help him overcome the disability and learn how to read,"
8/19/04 Tr. at 92, and "[t]hat needs to happen ... in a
structured intensive one-to-one reading and writing context," id.
Mr. Ristuccia observed that he did not "see that happening in the
school where [C.J.] is."  Id.  In fact, Mr. Ristuccia offered
that he had "yet to find a public school that is ... designed to
provide that level of intense instruction[17] for such a large

_____

[17] Mr. Ristuccia explained the level of instruction which he had
in mind.  "C.J. needs one-to-one intensive instruction for at least
one block per subject, reading and writing, per day.  So, we're
talking a minimum of an hour and a half of intensive one-to-one each

part of the day."  8/19/04 Tr. at 92.  He identified Landmark and
"the Carol School," id. at 101, as schools which would be
appropriate for C.J., id. at 100-101.

In her written closing argument, Parent's counsel stated
that "[t]he evidence, both from the best qualified witnesses and
the school's own records, shows that CJ needs intensive help that
cannot be provided by the Bristol-Warren schools."  Supplemental
Exhibits ("Supp. Exs."), Ex. B (Parent and Student's Closing
Argument) at 6.  Counsel repeated this theme throughout her
argument.  See id. at 10 ("Dr. Kotula recommended that CJ be
placed in a special school that specializes in teaching students
with language-based learning difficulties."); id. ("His needs
cannot be met in the traditional school setting."); id.
("Bristol-Warren may argue that continuing the Wilson reading
program will be sufficient to enable CJ to learn to read.  The
evidence shows otherwise."); id. at 11 ("The school also lacks
the ability to provide the services CJ needs."); id. at 15 ("CJ
should not be mainstreamed."); id. ("[T]he school's efforts to
accommodate CJ in the regular education setting have failed.");
id. ("CJ receives no meaningful benefit from general education
classes."); id. ("Dr. Kotula and Mr. Ristuccia both testified
that CJ will likely drop out of school if he is not placed in an
appropriate setting.  CJ agrees [7/15/04 Tr. at 53].  He is being
harmed not benefited, by placement in the general education
setting.").

In the conclusion of her sixteen page, single-spaced closing
argument, Parent's counsel explicitly identified placement in a

---

day just to focus on the reading and the writing."  8/19/04 Tr. at 93.
He rejected as "insufficient," id. at 92, the level of instruction in
these areas in the proposed IEP, and he added that "it's the wrong
setting.  You know, to teach C.J. reading and writing skills in a
mainstream setting is just inappropriate given the data that we have
in front of us," id.

private school placement as the relief which Parent requested:

> CJ must be placed in a special school for students with
> language-based learning disabilities, such as the
> Landmark School, as recommended by Dr. Kotula and Mr.
> Ristuccia ....
>
> For the foregoing reasons, counsel for the student and
> parent respectfully requests the Hearing Officer to order
> the Bristol-Warren Regional [S]chool District to place CJ
> at the Landmark School.   Although we do not argue that
> CJ needs residential placement, no schools within an
> hour's drive have been located.   In this situation,
> placement in a residential school is appropriate.

Parent and Student's Closing Argument at 16.

BWRSC also points out that the Decision specifically states
that the issue to be decided is: "Was the placement for the
student appropriate under FAPE?"[18]   BWRSC Mem. at 3 (quoting
Decision at 3).   Furthermore, during the hearing, the Hearing
Officer repeatedly agreed with BWRSC's counsel that the issue was
placement.   See 8/19/04 Tr. at 40;[19] 8/25/04 Tr. at 98-99, 107.[20]

---

[18] Regrettably, the Hearing Officer did not directly answer this
question.   See Decision.   Since he did not order an out of district
placement (or any change in placement in terms of the school that C.J.
was to attend), see id. at 20-21, the logical inference would be that
he found that C.J.'s placement was "appropriate under FAPE," id. at 3.
Incongruently, however, the Hearing Officer found that the school
department had not met C.J.'s needs in reading, written language, and
mathematics and that this was a violation of his right to a FAPE.   See
id. at 19.

[19] See n.14.

[20] The 8/25/04 Tr. reflects the following exchanges:

Q.   The previous year the goal was to bring C.J. to a Level
     3 on the rubric?

     MR. HENNEOUS: Objection.   This was not a subject on
     direct exam and I am going to argue as I argued before,
     this is not the subject of this due process hearing.
     We are here on the most recent IEP. We've gone back to
     the IEP before to talk about the 2002/2003 school year
     but this is not something going back two, three or four

14

Based on this record, I find that Parent's primary goal was an out of district placement.  I further find based on the Hearing Officer's Decision that Parent did not achieve this goal.

BWRSC argues that because Parent did not achieve her primary goal, her achievement in this case was de minimus.  See BWRSC Mem. at 6.  Therefore, according to BWRSC, Parent cannot be considered a prevailing party who is entitled to an award of

---

IEPs ago.  This is an issue about placement.

MS. KING: To respond, I think the evidence is quite relevant because C.J.'s goal before was to reach level 3 in the rubric and he didn't even attain that goal.

[HEARING OFFICER]: Okay.  **Mr. Henneous is correct about the placement** but if you want to point out the fact that he didn't reach level 3, that's fine.

MS. KING: It definitely relates to placement and services because he hasn't attained the previous goals.

[HEARING OFFICER]: All right.

8/25/04 Tr. at 98-99 (bold added).

Q.  Do you have your evaluation with you or would you like to review it?

A.  I don't have it with me.

MR. HENNEOUS: Again, I'm going to object.  The evaluation is not the subject of this hearing regarding placement.

[HEARING OFFICER]: **I agree with regards to placement.**

....

MS. KING: Should I go ahead with this or not?

[HEARING OFFICER]: **As long as it is in regards to future placement for C.J.**, I don't have a problem with it.

8/25/04 Tr. at 106-07 (bold added).

15

attorney's fees and costs.  See BWRSC Mem. at 6. (citing Kathleen
H. v. Massachusetts Dep't of Educ., 154 F.3d 8 (1st Cir. 1998);
Linda T. v. Rice Lake Area School Dist., 417 F.3d 704 (7th Cir.
2005).

The Court finds the two cases BWRSC cites in support of this
contention distinguishable from the instant matter.  In Kathleen
H., the hearing officer ruled in favor of the school committee,
finding that, with some modifications to the program, the school
committee "was and is capable of meeting the child's needs ...."
154 F.3d at 10; see also id. at 12.  Although the hearing officer
found that the school committee had made procedural errors in the
1993-94 and 1994-95 IEPs, "they did not rise to the level of
noncompliance ...."  Id. at 12.  She further found "that the IEPs
lack of specificity did not deny [the child] substantive
services."  154 F.3d at 12.

In contrast, here the Hearing Officer ruled in favor of
Parent, see Decision at 19, stating explicitly that "the parent
prevails," id.  He found that BWRSC "did not meet the needs of
the student in reading, written language, and mathematics."  Id.
at 19.  He additionally found that "the reading program was used
intermittently and the reading specialist stopped working with
the student."  Id.  The Hearing Officer concluded that this was
"a violation of F.A.P.E."  Id.  These findings, in this Court's
view, are equivalent to determinations that there had been
noncompliance with the IEP and that BWRSC failed to provide
substantive services to C.J.

It is not clear from the opinion in Linda T. whether the
hearing officer found that the child had been denied a FAPE by
the school district.  See 417 F.3d at 706-07.  It is also not
clear whether the hearing officer awarded prevailing party status
to the parents.  See id.  While the district court found that the
parents were a prevailing party to the extent that the hearing

officer ordered the IEP revised to provide greater specificity regarding staff training, the court held that this success before the hearing officer was de minimis because the issue of greater specificity in the IEP was merely a "secondary concern," Linda T. v. Rice Lake Area School Dist., 417 F.3d at 707, to the issue of placement and the hearing officer's decision did not require the school district to provide the child with any new or additional services, see id..

Here the new IEP ordered by the Hearing Officer requires BWRSC to provide additional services. See Decision at 20. He ordered that C.J. be provided "a full reading program with the Wilson Reading Program or similar program." Id. While BWRSC contends that it was already providing such a program, the order must be viewed in the light of the Hearing Officer's findings that BWRSC had not met C.J.'s needs in reading and that the reading program "was used intermittently and the reading specialist stopped working with the student." Id. at 19. There is support in the record for these findings.[21] Thus, the Court finds that BWRSC was ordered to provide C.J. with additional reading services as the Hearing Officer found that the reading services prescribed by the IEP were not being provided.

The Court also finds that BWRSC was directed to provide

---

[21] Parent testified that she kept a record of the dates on which C.J. received the Wilson Reading Program and that from January to June of 2004 he did not receive it on a regular basis. See 7/15/04 Tr. at 71-73. C.J. testified he did not receive the program during the fall of 2003, see id. at 23-24, and that during January to June of 2004 he received the Wilson Reading Program only two or three times a month and the instruction was not always one-on-one (as it had been spring and summer of 2003) but sometimes was in the form of group instruction, see id. at 25-26. Sarah Crowell, the special education teacher who was C.J.'s instructor for the Wilson reading program, acknowledged that the literacy period which she had with C.J. was not used exclusively for development of literacy skills, but was also used to complete science projects and homework. See 8/25/07 Tr. at 93-94.

additional services in written language and mathematics by virtue of the Hearing Officer's orders that C.J. receive "small group/ individualized instruction in written language," Decision at 20, and "small group instruction in mathematics," id.  C.J. testified that in the 2003-2004 school year he did not receive small group instruction in writing and in math.  See 7/15/05 Tr. at 21.  He stated that there were "20 to 23," id. at 16, students in his language arts and math classes, see id.  Sarah Crowell, C.J.'s special education teacher, also appeared to acknowledge that during the 2003-2004 school year he did not receive the special education "written language" instruction as it was prescribed in the IEP.  See 8/25/04 Tr. at 92-93.

In addition, notwithstanding the conflict between the Hearing Officer's oral statements and his written Decision,[22] it is, nevertheless, a fact that he ordered additional services to be provided to C.J. in the form of "an extended school year ...." Decision at 20.  Last, although far less significant, the Hearing Officer ordered BWRSC to develop "an appropriate behavioral plan ...."  Id.  While developing such a plan does necessarily mean that C.J. will be provided with additional services, given Parent's requests that C.J. "receive services for his social-emotional difficulties," Request for DPH at 2, and that BWRSC be restrained from disciplining C.J. for conduct relating to his disability, see id., this requirement reasonably may be classified as "new" and attributable to Parent's requests.[23]

---

[22] See n.14.

[23] Although the Court has concluded that the requirement that BWRSC develop an appropriate behavioral plan should be counted within the relief which Parent obtained, I do not reach the same conclusion regarding the evaluations ordered by the Hearing Officer.  Parent objected during the administrative hearing to BWRSC's motion for a psychological evaluation.  See Supp. Ex. F (Objection to District's Motion for an Order Regarding Psychological Evaluation ("Parent's Objection").  In Parent's Objection, counsel stated that "[f]urther

Thus, the instant case is distinguishable from <u>Linda T.</u> because here the Hearing Officer ordered BWRSC to provide C.J. with new and additional services and, therefore, the degree of Parent's success is more than de minimus. <u>Cf.</u> <u>Linda T.</u>, 417 F.3d at 709 (finding no abuse of discretion in district court's reasoned determination that parents' degree of success was de minimum and insufficient to support an award of attorney's fees); <u>Kathleen H.</u>, 154 F.3d at 15 (stating that it was not abuse of discretion for district court to deny attorney's fees where the changes are de minimis "in the context of the Parents' broader goals in this case").

### c. Finding Re Prevailing Party Status

I find that although Parent did not achieve her primary goal of an out of district placement, she still qualifies as a prevailing party because: 1) she obtained relief on a significant claim in the litigation, 2) the relief effected a material alteration in Parent's legal relationship with BWRSC, and 3) the alteration was not merely technical or de minimis in nature. <u>See</u> <u>Kathleen H.</u>, 154 F.3d at 14. Parent obtained relief on the following significant claims. First and foremost, the Hearing Officer determined that Parent's claim that BWRSC had failed to provide C.J. with a FAPE, <u>see</u> Request for DPH at 2, was substantiated, <u>see</u> Decision at 19. Parent also obtained relief on her claim that "C.J. has not received appropriate instruction in the Wilson reading program this year." Request for DPH at 1.

---

evaluations are not relevant to the resolution of this matter. The primary issues in this case are placement and services." <u>Id.</u> at 1. Parent's counsel also stated in a July 12, 2004, letter to BWRSC's counsel that she was "not insisting on neuropsychological testing at this time." Supp. Ex. C (Parent's Motion for Partial Summary Judgment), Ex. 6 (Letter from King to Henneous of 7/12/04); <u>see also</u> Supp. Ex. C at 1 ("The parent sough only an independent educational evaluation from Dr. Kotula, not a neuropsychological evaluation ....").

As C.J.'s extremely low reading ability was the root cause of his academic difficulties, the lack of appropriate reading instruction was indisputably a significant complaint, and the Hearing Officer found it also to be substantiated.  <u>See</u> Decision at 19 ("the reading program was used intermittently and the reading specialist stopped working with the student").  The Hearing Officer directed BWRSC to provide "a full, reading program with the Wilson Reading Program or similar program."  <u>Id.</u> at 20.

Parent additionally received some relief, although not to the extent of obtaining an out of district placement, on her claim that C.J. required "a small, language-based educational setting ...."  Request for DPH at 2.  Specifically, the Hearing Officer ordered BWRSC to provide small group/individualized instruction to C.J. in written language and small group instruction in mathematics.  <u>See</u> Decision at 20.  The educational setting in which C.J. was to receive instruction was a significant issue in this case because, at the time the Request for DPH was filed, C.J. was only receiving small group instruction in literacy.  <u>See</u> 7/15/04 Tr. at 16, 21.  His other classes had twenty to twenty-three students in them.  <u>See</u> <u>id.</u>

The above described relief effected a material alteration in Parent's legal relationship with BWRSC in that BWRSC was required to provide additional services to C.J.  The relief was not merely technical or de minimus as the requirement for small group instruction in reading, written language, and math necessitates that substantial additional resources be allocated by BWRSC to the task of educating C.J.  Accordingly, I find that Parent qualifies as a prevailing party because she prevailed on a significant claim even though she was unsuccessful on her primary claim.  <u>See</u> <u>Texas State Teachers Ass'n, v. Garland Indep. Sch.</u> <u>Dist.</u>, 489 U.S. 782, 791-92, 109 S.Ct. 1486, 1493 (1989)("If the

plaintiff has succeeded on any significant issue in litigation
which achieve[d] some of the benefit the parties sought in
bringing suit, the plaintiff has crossed the threshold to a fee
award of some kind.")(internal quotation marks
omitted)(alteration in original).

###### d. **Effect of Parent's Partial Success on Fee Application**

The most critical factor in determining the reasonableness
of a fee award is the degree of success obtained.  Farrar v.
Hobby, 506 U.S. 103, 114, 113 S.Ct. 566, 574 (1992); Hensley v.
Eckerhart, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941 (1983); see
also Texas State Teachers Ass'n, v. Garland Indep. Sch. Dist.,
489 U.S. at 790, 109 S.Ct. at 1492 ("[T]he degree of the
plaintiff's success in relation to the other goals of the lawsuit
is a factor critical to the determination of the size of a
reasonable fee, not to eligibility for a fee award at all.").
There is no precise formula for adjusting a fee request when a
party has obtained only partial or limited success.  Hensley v.
Eckerhart, 461 U.S. at 436, 103 S.Ct. at 1941.  "The district
court may attempt to identify specific hours that should be
eliminated, or it may simply reduce the award to account for the
limited success."  Id. at 436-37, 103 S.Ct. at 1941.

In this case, it is not practical to attempt to separate out
hours attributable to Parent's efforts to obtain an out of
district placement because those same hours may have contributed
to a limited degree to Parent's success in obtaining C.J.'s
placement in a small group educational setting for the Wilson
reading program, written language, and math.  See Decision at 20.
A better approach is to effect an across the board percentage
reduction of those properly documented and reasonable hours for
which Parent would have been entitled to an award of attorney's
fees if she had prevailed on all her claims.  In view of the fact
that Parent did not achieve her primary goal of out of district

placement, a very substantial reduction in those hours is
warranted.  Accordingly, the Court will reduce by sixty percent
(60%) the total number of properly documented and reasonable
hours.

## 2.  Reasonableness of Fee Request

    BWRSC notes that pursuant to 34 C.F.R. Part
300.513(c)(4)(iii), an award of attorney's fees may be reduced if
the court finds that "the time spent and legal services furnished
were excessive considering the nature of the action or
proceeding."  BWRSC Mem. at 6 (quoting the regulation); see also
Rhode Island Board of Regents for Elementary and Secondary
Education Regulations Governing the Education of Children with
Disabilities Section 300.513(c)(4)(iii).  BWRSC also notes that
the First Circuit recognizes the "lodestar" approach to analyzing
a fee application.  See BWRSC Mem. at 7 (citing Grendel's Den,
Inc. v. Larkin, 749 F.2d 945, 950 (1st Cir. 1984)).

> The "lodestar"–a threshold point of reference which is
> subject to additions or deductions for specific
> reasons–is determined by multiplying the total number of
> hours reasonably spent by a reasonable hourly rate.  To
> determine the number of hours reasonably spent, one must
> first determine the number of hours actually spent and
> then subtract from that figure the hours which were
> duplicative, unproductive, excessive, or otherwise
> unnecessary.

Grendel's Den Inc. v. Larkin, 749 F.2d at 950 (internal citations
omitted).  A reasonable hourly rate is based on prevailing rates
in the community and takes into account the qualifications,
experience, and specialized competence of the attorneys involved.
See Gay Officers Action League v. Puerto Rico, 247 F.3d 288, 295
(1st Cir. 2001).

    BWRSC challenges the request by Parent's attorney for
attorney's fees in the amount of $84,635.00.  See BWRSC at 7; see
also Petition, Att. 2 (bill).  BWRSC disputes first Parent's

attorney's claim that the "case required much more preparation than the 'average' case." Petition, Ex. 1 (Affidavit of Carol J. King) ("King Aff.") ¶ 20. Rather, in BWRSC's view: "This was a relatively straight forward case. The Parent believed that the school department could not provide services to her child and therefore the child should be placed out of district. The District believed it could provide the required services to the child in district." BWRSC Mem. at 7.

In support of this objection, BWRSC has submitted an affidavit from Mary Ann F. Carroll, an attorney with experience in due process hearings and who has represented both parents and school districts in those proceedings. See id., Ex. 1 (Affidavit of Mary Ann F. Carroll ("Carroll Aff.") ¶ 4. Attorney Carroll attests that, after reviewing the record of this case, she does "not believe that it is any more difficult nor is it any more involved than most cases that eventually end in a due process hearing." Id. ¶ 7. Attorney Carroll further attests that in the fall of 2005 she represented the parents of a child in a due process hearing that was comparable to this case. See Carroll Aff. ¶ 5. According to her affidavit, the total number of hours which Attorney Carroll spent on that case was 124.8 hours. See id. She contrasts this with the approximately 235 hours spent by Parent's attorney in this case. See id. ¶ 6. Attorney Carroll affirms that, after comparing her bill in the comparable case to Parent's attorney's bill in this case, Parent's attorney is charging for 150% to 190% of the hours that Attorney Carroll charged. See id.

Parent's attorney has submitted an eleven page affidavit, detailing her experience, the work she performed, and the reasons

she believes the work to have been reasonable and necessary.[24]
See King Aff.  The Court has carefully reviewed this affidavit,
the bill of Parent's attorney, and the affidavit of Attorney
Carroll.  After doing so, the Court agrees that the total number
of hours claimed is more than was reasonably necessary for the
case, but the excessiveness is not as great as opined by Attorney
Carroll, whose opinion the Court discounts somewhat.  At the time
Attorney Carroll offered her opinion, she had only four years of
experience as a practicing attorney (although thirty years as an
educator), see Carroll Aff. ¶¶ 2-3, far fewer than Attorney
King's twenty-six plus years, see King Aff. ¶ 1.  In addition,
Attorney Carroll's background as a school administrator and
superintendent of schools and her more recent representation of
school districts in "many due process hearings," Carroll Aff. ¶
4, makes it difficult to view her opinion as totally impartial.

    The Court agrees with Parent that BWRSC defended this case
vigorously.  It finds that most of the tasks described in
Attorney King's detailed affidavit were reasonably necessary,
although the time devoted to accomplishing some tasks was more
than that which was reasonably necessary.  For example, the Court
finds that 42.8 hours (expended between 9/21/04 and 10/1/04) to
write a sixteen page, single-spaced closing brief was excessive.
Accordingly, the Court will make a reduction of twenty percent
(20%) in the total number of properly documented hours on the

_____

    [24] The affidavit submitted by Parent's counsel appears to indicate
that she did not charge Parent a fee for her services in this matter.
See King Aff. ¶ 16 ("Although I knew that Ms. DaSilva could not pay my
fee, I could not turn away her request for help.  I kept regular,
contemporaneous records of time spent and tasks undertaken in the
case, just as I do with paying clients.").  For future guidance,
Parent's counsel is advised to comply fully with Local Rule Cv 54.1.
She should state explicitly in her affidavit whether any fee agreement
exists with the client on whose behalf she is seeking attorney's fees.
See DRI LR Cv 54.1(b)(1)(D).  If there is such an agreement, it must
be described.  See id.

24

basis that such time was not reasonable and necessary.

BWRSC also objects to time that Parent's counsel expended in truancy proceedings related to C.J. and his brother.  See BWRSC Mem. at 8.  At the August 17, 2006, hearing on the Petition, Parent's counsel conceded that these hours should not have been included in her bill and that she was not seeking to have BWRSC pay for them.  See Tape of 8/17/06 Hearing.  Accordingly, the Court disallows the 31 hours attributable to truancy proceedings from Parent's counsel's bill.[25]

## 3.  Sufficiency of Documentation

BWRSC argues that the time entries which Parent has submitted are insufficiently detailed to carry her burden of demonstrating the reasonableness of the hours billed.  See BWRSC Mem. at 9; see also Saizan v. Delta Concrete Prods. Co., 448 F.3d 795, 799 (5th Cir. 2006)("plaintiffs seeking attorney's fees are charged with the burden of showing the reasonableness of the hours billed").  BWRSC complains that for "most entries on these records it is impossible to tell whether the entry is even related to the due process matter."  BWRSC Mem. at 9.

An attorney is not required to record the subject of every brief telephone call or letter exchanged during the course of a lawsuit.  Such an extreme requirement would be crippling and wasteful.  The standard is "reasonable detail."  Gay Officers

---

[25] Exhibit 2 to BWRSC's Mem. is a copy of Parent counsel's bill with the time attributable to the truancy proceedings highlighted in yellow.  At the August 17, 2006, hearing Parent's counsel agreed that the hours highlighted in this exhibit should not have been included in her fee request.  See Tape of 8/17/06 Hearing.  The highlighted hours total 31.

In an apparent inadvertent error, BWRSC understates the number of these hours in its memorandum.  See BWRSC Mem. at 8 ("Defendant's attorney has claimed an undeterminable amount of time that is over thirteen hours (13.8) ....").  The Court concludes that BWRSC's number of 13.8 is in error, because 24.6 hours are unquestionably attributable to the truancy proceedings and 6.4 hours appear to be so (24.6 + 6.4 = 31 hours).  See BWRSC Mem., Ex. 2 at 1-2.

Action League v. Puerto Rico, 247 F.3d 288, 297 (1st Cir. 2001);
see also Hensley v. Eckerhart, 461 U.S. at 437 n.12, 103 S.Ct. at
1941 n.12 ("Plaintiff's counsel ... is not require to record in
great detail how each minute of his time was expended.  But at
least counsel should identify the general subject matter of his
time expenditures.").

       To the extent that BWRSC seeks to have the Court disallow
for inadequate detail the time claimed by Parent's counsel on
telephone calls, drafting correspondence, research, reviewing
documents, or similar generic tasks and the time billed for such
tasks is .5 hours or less, BWRSC argument is rejected.  See
Hensley v. Eckerhart, 461 U.S. at 437 n.12, 103 S.Ct. at 1941
n.12.  To the extent that the time billed is more than .5 hours
and no additional information beyond a generic description of the
task is provided (and it is not possible for the Court to deduce
the likely subject of the task from either the date the task was
performed or the surrounding entries), such argument is accepted.
Cf. id. ("As for the future, we would not view with sympathy any
claim that a district court abused its discretion in awarding low
attorney's fees in a suit in which plaintiffs were only partially
successful if counsel's records do not provide a proper basis for
determining how much time was spent on particular
claims.")(quoting Nadeau v. Helgemoe, 581 F.2d 275, 279 (1st Cir.
1978)).  It is reasonable to require that when more than a half
hour is being billed for such vague tasks as "legal research" or
a "telephone call" that additional information about the subject
of the research or the reason for the telephone call be provided.
Accordingly, the Court disallows the for insufficient detail the
time identified below:

| Date | Description | Hours |
|------|-------------|-------|
| 05/26/04 | Online research | 0.8 |
| 06/10/04 | Online research | 1.0 |
| 06/29/04 | Telephone call with Amy Tabor | 0.8 |
| 06/29/04 | Telephone call w/ Sandy Jacobi | 0.8 |
| 06/30/04 | Research | 0.8 |
| 07/06/04 | Online legal research | 1.2 |
| 07/16/04 | Online research | 0.8 |
| 07/20/04 | Research | 0.6 |
| 08/10/04 | Drafting correspondence | 1.0 |
| 12/23/04 | Legal research | 2.0 |
| 02/28/05 | Online research | 0.7 |
| 03/09/05 | Research | 2.0 |
| 05/02/05 | Online research | 3.3 |
| 05/19/05 | Research | 1.8 |
| | Hours disallowed for insufficient detail: | 17.6 |

### 4.  Other Time Disallowed

Parent counsel's bill also includes time apparently spent by two other attorneys, Susan Saltzberg and Ray Wallace.  See BWRSC Mem., Ex. 3 (copy of bill with times for these two attorneys highlighted).  There is no explanation as to who these attorneys are or why their involvement in the case was necessary.  There also are no affidavits from them to justify their claimed hourly rate of compensation at $225 per hour.  Accordingly, the Court disallows all of the 29.50 hours charged by Attorneys Saltzberg and Wallace.  The Court also disallows 1.5 hours which Parent's counsel billed for strategy conferences with these two attorneys on 8/26/04 and 11/17/04.  See Petition, Ex. 2 at 4.

27

## 5. Determination of Fee

Applying the rulings made above, the Court computes the fee award as shown below:

```
382.50   Total Number of Hours Billed
-31.00   Hours attributable to truancy proceeding
-17.60   Hours disallowed for insufficient detail
-29.50   Hours disallowed for Susan Saltzberg and Ray Wallace
- 1.50   Hours disallowed (Saltzberg and Wallace conferences)
302.90   Hours properly documented


302.90   Hours properly documented
-60.60   Hours excessively expended (20% x 302.90 = 60.60)[26]
242.30   Hours properly documented and reasonably expended


-145.40  Reduction for Partial Success (60% x 242.30 = 145.40)
 96.90   Total Hours allowed


96.90 Hours at $225.00[27] per hour = $21,802.50.


$21,802.50 TOTAL ATTORNEY'S FEES
```

---

[26] The Court rounds up or down to the nearest tenth of an hour.

[27] BWRSC does not argue in its memorandum that Parent counsel's hourly rate of $225.00 is unreasonable. See BWRSC Mem. It has submitted an affidavit from Attorney Carroll in which she states that her "present hourly rate to parents is $175.00." Carroll Aff. ¶ 4. However, as previously noted, Attorney Carroll has only been in practice since 2002 whereas Parent's counsel has been an attorney since 1979. The Court has reviewed the filings by Parent's counsel in the administrative hearing, and they reflect a high level of competence. In addition, Parent's counsel has submitted two affidavits from local attorneys attesting to the reasonableness of her hourly rate of $225.00 per hour for the work performed in this case. See Petition, Ex. 3 (Affidavit of Mark W. Dana); id., Ex. 4 (Affidavit of H. Jefferson Melish). Accordingly, the Court finds that $225.00 per hour is a reasonable rate of compensation for very experienced and competent counsel like Parent's attorney.

Accordingly, I recommend that Parent's counsel be awarded attorney's fees in the amount of $21,802.50.

## 5.  Costs.

Parent's request for costs in the amount of $909.00 for transcripts is reasonable and justified.  I recommend that it be approved.

### Conclusion

For the foregoing reasons, I recommend that the Petition be granted to the extent that Parent be awarded attorney's fees of $21,802.50 and costs of $909.00.  Any objections to this Report and Recommendation must be specific and must be filed with the Clerk of Court within ten (10)[28] days of its receipt.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


/s/ David L. Martin
DAVID L. MARTIN
United States Magistrate Judge
March 2, 2007

---

[28] The ten days do not include intermediate Saturdays, Sundays, and legal holidays.  See Fed. R. Civ. P. 6(a).